IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CRYSTAL POWER COMPANY LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. G-10-57 |
| | § | |
| COASTAL SALVADORAN POWER LTD. | § | |
| n/k/a INKIA SALVADORIAN POWER | § | |
| LIMITED; COASTAL NEJAPA LTD. n/k/a | § | |
| NEJAPA HOLDING COMPANY LIMITED; | § | |
| MCFALL, BREITBEIL & SHULTS, P.C., | § | |
| f/k/a MCFALL, MARTINEZ, SHERWOOD, | § | |
| BREITBEIL & SULLIVAN, P.C.; VIDAL G. | § | |
| MARTINEZ; FRANKLIN, CARDWELL & | § | |
| JONES, P.C.; R. DEAN GRAVES; | § | |
| ALVAREZ & MARSAL, INC.; BANCO | § | |
| AGRICOLA S.A.; BANCO HSBC | § | |
| SALVADORENO, S.A.;  and | § | |
| BANCO G&T CONTINENTAL | § | |
| EL SALVADOR, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Kenneth M. Hoyt, United States District Judge, is the "Motion to Remand, and in the Alternative, Motion to Compel Arbitration, Dismiss and Remand, and Motion to Sever and Remand" of Plaintiff Crystal Power Ltd. ("Crystal Power"). *See* Docket Entry No. 23. The Court, having considered the Motion, the submissions of the parties, the pleadings, and the applicable law, now submits this Report and Recommendation to the District Court.

I.  Background

The origins of this case relate to a fuel-powered electricity-generating plant in El Salvador. In 1994, while the plant was under construction, Nejapa Power Company ("NPC") entered into a contract with Rio Lempa Hydroelectric Executive Commission ("CEL"), a Salvadoran

governmental entity, for the sale and purchase of the plant's electricity. The contract, known as the Power Purchase Agreement ("PPA"), dictated that NPC would sell power to CEL through the year 2015. *See* Docket Entry No. 31, at Exh. C. In 1999, however, CEL initiated arbitration seeking to terminate the PPA. CEL alleged that the PPA had become excessively onerous and its continued performance imposed an undue hardship upon CEL. *See id.* In March 2002, the arbitration resulted in an award to NPC. *See id.* The award was divided into two parts: (1) a lump sum cash award from CEL to NPC of $90 million; and (2) periodic payments to be made to NPC over the course of five years pursuant to a separately executed contract (*i.e.*, transmission costs agreement). *See id.*

Crystal Power owns a minority interest in the Coastal Nejapa, Ltd., NPC's parent company. On July 8, 2002, attorney Vidal Martinez ("Martinez"), a partner at Winstead Sechrest, entered into an hourly fee contract to litigate claims related to the minority interest participation in the proceeds of the arbitration award. *See* Docket Entry No. 23, at Exh. A. Thereafter, Martinez left Winstead Sechrest; became a partner at McFall, Breitbeil & Shults, P.C. f/k/a McFall, Martinez, Sherwood, Breitbeil & Sullivan, P.C. (the "McFall firm"); and took his clients (including Crystal Power) with him.

In October 2002, Crystal Power filed this case in the 23rd Judicial District Court of Brazoria County, Texas (cause 21815), against Coastal Nejapa (now "Nejapa Holding") and Coastal Salvadoran Power, Ltd. ("CSP"), the majority shareholder of Coastal Nejapa, asserting various claims relating to NPC's use of the arbitration award proceeds. *See* Docket Entry No. 23, at Exh. B. The entities controlling the majority interest owner, CGP and El Paso, were added, subsequently, as defendants. *See id.*, at Exh. C.

On April 8, 2003, the McFall firm and Crystal Power executed a new engagement agreement, reflecting the contigency fee for the pending case and superseding the July 2002, hourly fee contract under which the attorney-client relationship had begun. *See* Docket Entry No. 23, at Exh. E.

In February 2004, Crystal Power discharged the McFall firm. *See* Docket Entry No. 23, at Exh. F. During the same time period, Martinez left the McFall firm and entered into a separate, contingency fee agreement with Crystal Power. *See id.*, at Exh. G.

In March 2004, Crystal Power assigned 60% of any lawsuit recovery, up to $5,600,000.00, to several El Salvadoran banks, who are now part of this case. *See* Docket Entry No. 30, at Exh. 2.

In April 2004, the McFall firm filed a declaratory judgment action in federal court, claiming breach of the April 8, 2003, contingent fee agreement. *See* Docket Entry No. 23, at Exh. I. On October 13, 2004, as part of a mediated settlement, the McFall firm and Crystal Power entered into another contingent fee agreement. *See* Docket Entry No. 30, at Exh. 1. The McFall firm reduced its contingent fee interest from at least 33% to 5% of Crystal Power's claims. *See id.* According to the McFall firm, in October 2004, it had no knowledge of Crystal Power's prior assignment to the El Salvadoran banks.

In October 2007, the McFall firm filed a petition in intervention in cause 21815, claiming that pursuant to the October 13, 2004, contingent fee contract, the McFall firm has a 5% interest in the claims asserted by Crystal Power. *See* Docket Entry No. 23, at Exh. K.

In July 2008, Crystal Power filed its answer to the McFall firm's claim in intervention for a contingent attorney's fee interest, and asserted a cross claim for fee forfeiture as an offset to the

3

McFall firm's claim, contending the McFall firm committed legal malpractice and/or breaches of fiduciary duty. *See* Docket Entry No. 23, at Exh. L.

In January 2010, after years of litigation, Crystal Power reached a settlement agreement in cause 21815 with defendants CGP and El Paso. The $948,000.00 in settlement funds to be paid to Crystal Power were deposited into the registry of the court and remain in Brazoria County. As to the true defendants that remain in cause 21815, CSP and Nejapa, the claims for trial relate to Crystal Power's allegation that it was deprived of its share of the proceeds from the arbitration award related to the Nejapa power project. *See* Docket Entry No. 23, at Exh. M. As to the other parties, only derivative claims in intervention and third party claims arising out of those claims in intervention remain. *See id*.

After Crystal Power's settlement with CSP and Nejapa, in cause 21815, the McFall firm filed a motion to release settlement proceeds, disburse its attorney's fees, and a motion to compel arbitration. *See* Docket Entry No. 23, at Exhs. N and O. No rulings, however, were made by the state court on these filings. Instead, on February 3, 2010, trial was set for March 8, 2010. *See id.*, at Exh. P.

On February 19, 2010, the McFall firm removed cause 21815 to this Court. *See* Docket Entry No. 1. The McFall firm asserts that this Court has original jurisdiction because Crystal Power's cross claim against the McFall firm directly invokes the contingent fee agreements, both of which contain arbitration provisions, and, according to the McFall firm, those arbitration provisions fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *See* 9 U.S.C. §§ 203 and 205.

On March 22, 2010, Crystal Power filed the pending motion to remand, and in the alternative, motion to compel arbitration, dismiss and remand, and motion to sever and remand.

*See* Docket Entry No. 23.  Defendants oppose the motion to remand and, instead, seek an order compelling arbitration.  *See* Docket Entry Nos. 24, 28-35.

II.  <u>Analysis</u>

    A.  <u>Standard</u>

In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before judgment, it determines that it lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).  When the jurisdiction of the court is challenged, the party seeking to invoke federal jurisdiction has the burden of establishing the existence of subject matter jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  "The federal removal statute . . . is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441.

    B.  <u>Original Jurisdiction</u>

In its removal, the McFall firm's asserted basis for the federal question jurisdiction is the Convention, 9 U.S.C. §§ 203 and 205.  *See* Docket Entry No. 1.  Section 203 provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.  Section 205 provides:

> Where the subject matter of an action or proceeding pending in a State court **relates to** an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceedings to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.  The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint

>but may be shown in the petition for removal.  For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205 (emphasis added).

"Section 205 does not explicitly define when an action 'relates to' an arbitration agreement falling under the Convention." *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 377 (5th Cir. 2006).  Federal courts, however, have recognized "broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention."  In this regard, the Fifth Circuit has found that an arbitration agreement "relates to" the subject matter of the lawsuit if the agreement could conceivably affect the outcome of the case:

>[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit.  Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.

*Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).  To emphasize the low jurisdictional threshold, the Fifth Circuit further noted:

>As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of "relates to."

*Id*.

Here, the cross claim asserted by Crystal Power against the McFall firm, arising from the McFall firm's former representation of Crystal Power in this litigation, relates to and directly invokes the fee agreements.  The fee agreements' identical arbitration provisions provide for arbitration of "[a]ny and all disputes, controversies, claims or demands arising out of or relating to" the agreements.  *See* Docket Entry No. 31, at Exh. E at ¶ 6.01; Exh. D, at ¶ 10.  In its cross claim, Crystal Power alleges that the McFall firm knowingly misled it into entering the 2003 fee agreement, knowing "it could not perform due to lack of both legal experience, fitness as

6

attorneys, and necessary investment capital." *See* Docket Entry No. 31, at Exh. G at ¶ 27. Crystal Power further alleges that the McFall firm encouraged it to sign the 2004 fee agreement in breach of its fiduciary duty to Plaintiff, and that the McFall firm and Martinez conspired to convince their client, Plaintiff, to essentially give 5% of its causes of action as attorneys' fees to the McFall firm. *See id.*, at Exh. G at ¶¶ 28-29. Consequently, Crystal Power's cross claim expressly "relates to" the contingent fee agreements, both of which contain an international arbitration agreement, that "falls under" the Convention.

> An agreement falls under the Convention when:
>
> (1) there is a written agreement to arbitrate the dispute; (2) the agreement provides for arbitration in a territory of a signatory to the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) the agreement is not solely between citizens of the United States.

*See* 9 U.S.C. § 202; *Sedco, Inc. v. Petroles Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144-45 (5th Cir. 1985); *Roser v. Belle of New Orleans, L.L.C.*, No. Civ. A. 03-1248, 2003 WL 22174282, at *3 (E.D. La. Sept. 12, 2003). In the case at bar, the arbitration clause in both of the contingent fee agreements meets each of these elements. Specifically, the fee agreements are in writing; contain an express arbitration clause; are between parties in a commercial relationship; provide for arbitration in a signatory nation (United States); and, Crystal Power is an El Salvadoran corporation. *See* Docket Entry No. 31, at Exh. E; Exh. D. Consequently, the arbitration agreement found in both contingent fee agreements falls under the Convention.

Finally, lending support to the conclusion that Plaintiff's claims are subject to federal question jurisdiction under the Convention are both the broad scope of the Convention's removal provision and the policy favoring a uniform body of federal law interpreting agreements under the

7

Convention. Thus, based on federal question jurisdiction under the Convention and removal jurisdiction under § 1441(c), the McFall firm properly removed this case to federal court.

## III.   Conclusion

It is, therefore, the **RECOMMENDATION** of this Court that the Plaintiff's Motion to Remand, and in the Alternative, Motion to Compel Arbitration, Dismiss and Remand, and Motion to Sever and Remand (Docket Entry No. 23) be **DENIED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who shall have until **October 1, 2010**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Failure to file written objections with the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____10th_____ day of September, 2010.

_____
John R. Froeschner
United States Magistrate Judge